UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
MCALLEN DIVISION

| | | |
|---|---|---|
| BELINDA SANTA MARIA, *et al*, | § | |
| | § | |
| Plaintiffs, | § | |
| VS. | § | CIVIL ACTION NO. 7:14-CV-536 |
| | § | |
| STATE FARM LLOYDS, *et al*, | § | |
| | § | |
| Defendants. | § | |

# ORDER

Pending before the Court is Plaintiffs' "Motion to Remand"[1] and "Motion for Leave to File First Amended Complaint."[2] Defendants have filed a response to the motion to remand[3] and a response to the motion for leave.[4] After considering the motions, responsive pleadings, and relevant authorities, the Court **DENIES** both motions.

### I. Procedural Background

On April 22, 2014, Plaintiffs filed suit in state court after a hailstorm struck Plaintiffs' house in April 2012.[5] Subsequently, on June 21, 2014, Defendants removed the case to this Court, alleging improper joinder of Defendant Freymann.[6] On July 10, 2014, Plaintiffs filed the instant motion to remand,[7] which Defendants opposed.[8] Shortly thereafter, the Court issued a series of orders denying motions to remand due to the improper joinder of Defendant Freymann in other hailstorm cases.[9] Coincidentally, most of those motions were filed by Plaintiffs' counsel,

---

[1] Dkt. No. 4 ("Motion to Remand").
[2] Dkt. No. 9 ("Motion for Leave").
[3] Dkt. No. 7 ("Response to Motion to Remand").
[4] Dkt. No. 12 ("Response to Motion for Leave").
[5] *See* Dkt. No. 1, Attach. 1 at p. 7.
[6] *See* Dkt. No. 1.
[7] *See* Motion to Remand.
[8] *See* Response to Motion to Remand.
[9] *See, e.g., Hernandez v. State Farm Lloyds*, Case No. 7:14-CV-255.

Mr. Mostyn.[10] Subsequently, Mr. Mostyn began filing "motions to withdraw the motions to remand" after the Court cautioned counsel against engaging in sanctionable conduct.[11]

Instead of withdrawing his motion to remand as in all other cases, Mr. Mostyn filed a "Motion for Leave to File First Amended Complaint" on behalf of Plaintiffs in the instant case, alleging for the first time that Plaintiffs' state-court petition and citation "mistakenly" listed Defendant Mario Munoz as a Florida resident ("Florida Munoz") because, in reality, Plaintiffs intended to sue a Mario Munoz from Texas ("Texas Munoz").[12] Subsequently, Plaintiffs filed a self-styled "Amended Motion to Remand," alleging remand is proper because the parties are not diverse.[13] The Court notes, however, that Plaintiffs did not effectively "amend" their motion to remand, since it was filed after Defendants' responded, and Plaintiffs did not seek leave of Court or obtain Defendants' written consent.[14] Thus, in essence if not in form, Plaintiffs' filing merely amounts to a reply to Defendants' response, if at all. Defendants oppose Plaintiffs' motion for leave to file the amended complaint, and request that if the Court grants the motion for leave, the Court also dismiss the Texas Munoz as improperly joined.

Given the interrelated nature of the motions and common issues involved in their disposition, the Court will consider them concurrently.

**II.  Motion to Remand**

Despite the fact that Mr. Mostyn continues to defend the proper joinder of Mr. Freymann—even in light of this Court's holding in *Hernandez*,[15] the Court will once again reiterate what it has held in numerous occasions: Freymann's joinder is clearly fraudulent and

---

[10] *See id.*
[11] *See, e.g., Dizdar et al v. State Farm Lloyds et al*, Case No. 7:14-CV-402.
[12] Motion for Leave at ¶¶ 2-4.
[13] Dkt. No. 10.
[14] *See* Fed. R. Civ. P. 15 (noting that a party may amend a pleading as a matter of course within 21 days of serving it or 21 days after a responsive pleading is filed; thereafter, a party may only amend with the opposing party's written consent or leave of Court).
[15] *Hernandez v. State Farm Lloyds*, Case No. 7:14-CV-255.

counsel's blatantly false protestations about Freymann's involvement with Plaintiffs' claim amount to sanctionable conduct.

### A. *Legal Standard*

The Court does not have subject matter jurisdiction under 28 U.S.C. § 1332 unless the parties are completely diverse and the amount in controversy exceeds $75,000.[16] "The doctrine of improper joinder is a narrow exception to the rule of complete diversity, and the burden of persuasion on a party claiming improper joinder is a heavy one."[17] "Doubts regarding whether removal jurisdiction is proper should be resolved against federal jurisdiction."[18] A party seeking removal can establish improper joinder in two ways: "(1) actual fraud in the pleading of jurisdictional facts, or (2) inability of the plaintiff to establish a cause of action against the non-diverse party in state court."[19]

When considering whether a party was improperly joined, "[t]he court may conduct a Rule 12(b)(6)-type analysis, looking initially at the allegations of the complaint to determine whether the complaint states a claim under state law against the in-state defendant."[20] A 12(b)(6)-*type* analysis is distinguishable from a pure-12(b)(6) analysis; in the improper joinder context, the Court evaluates the petition under the state-court pleading standards.[21]

The Supreme Court of Texas has stated:

> In determining whether a cause of action was pled, plaintiff's pleadings must be adequate for the court to be able, from an examination of the plaintiff's pleadings alone, to ascertain with reasonable certainty and without resorting to information

---

[16] 28 U.S.C. § 1332(a) (2014).
[17] *Campbell v. Stone Ins., Inc.*, 509 F.3d 665, 669 (5th Cir. 2007) (internal quotation marks and citations omitted).
[18] *Acuna v. Brown & Root Inc.*, 200 F.3d 335, 339 (5th Cir. 2000) (citation omitted).
[19] *Travis v. Irby,* 326 F.3d 644, 647 (5th Cir. 2003) (citation omitted).
[20] *Smallwood v. Ill. Cent. R.R. Co.*, 385 F.3d 568, 573 (5th Cir. 2004) (en banc) (citations omitted).
[21] For Judge Rosenthal's thorough explanation of why the Court uses the state court pleading standards in the improper joinder context, *see Edwea, Inc. v. Allstate Ins. Co.*, No. H-10-2970, 2010 WL 5099607, at *2-6 (S.D. Tex. Dec. 8, 2010).

aliunde the elements of plaintiff's cause of action and the relief sought with sufficient information upon which to base a judgment.[22]

In other words, the pleading must state a cause of action and give fair notice of the relief sought.[23] The Court "determin[es] removal jurisdiction on the basis of claims in the state court complaint as it exists at the time of removal."[24]

Alternatively, under certain circumstances, the Court may conduct a summary judgment-type inquiry instead: "[T]here are cases, hopefully few in number, in which a plaintiff has stated a claim, but has misstated or omitted discrete facts that would determine the propriety of joinder. In such cases, the district court may, in its discretion, pierce the pleadings and conduct a summary inquiry."[25] Here, by attaching evidence to their motion to remand, Plaintiffs pierce their pleadings and invite a summary-judgment inquiry. Since Plaintiffs are on notice that the pleadings may be pierced, and piercing the pleadings will clarify the record, the Court will conduct a summary judgment-type inquiry.

### B. *Plaintiffs' Pleadings*

In their original complaint, Plaintiffs lumped the three defendants together in blanket allegations of wrongdoing.[26] Plaintiffs clarify these vague pleadings in their motion to remand. In essence, Plaintiffs assert several bases for Freymann's liability. First, in their motion to remand, they assert that Freymann is a member of "zone leadership,"[27] who directly supervised Munoz and other adjusters and served as a "primary resource."[28] Second, Plaintiffs assert that

---

[22] *Stoner v. Thompson*, 578 S.W.2d 679, 683 (Tex. 1979) (citation omitted).
[23] *Id.*; *see also* TEX. R. CIV. P. 45 & 47.
[24] *Cavallini v. State Farm Mut. Auto Ins. Co.*, 44 F.3d 256, 264 (5th Cir. 1995).
[25] *Smallwood*, 385 F.3d at 573.
[26] For instance, Plaintiffs alleged that "[t]ogether, Defendants, State Farm, Freymann, and Munoz set about to deny and/or underpay on properly covered damages. State Farm, Freymann, and Munoz misrepresented to Plaintiffs that the adjuster's estimate" properly paid for the claim." Dkt. No. 1, Attach. 1 at p. 10, ¶ 20.
[27] Dkt. No. 4 at p. 2, ¶ 3.
[28] *Id.* at p. 4, ¶ 7.

Freymann improperly trained Munoz and other adjusters.[29] Plaintiffs also argue that these alleged actions suffice to create liability under the Texas Insurance Code, because "'persons engaged in the business of insurance' like Freymann can be held liable under the Insurance Code."[30] The Court will now examine evidence pertaining to each of these asserted bases for liability.

As evidence for their assertion that Freymann directly supervised Munoz, Plaintiffs cite a deposition from a prior case in which Freymann testified, "All my adjusters call me, we go over issues, I ride with them. Those type of things is training."[31] Plaintiffs argue further that "Freymann was the ONLY State Farm claim manager in the Rio Grande Valley around the time of the hail events and during the aftermath of the hail claims adjusting matters. It logically follows therefore, that Freymann would have been and was involved in Plaintiffs' and the other State Farm policyholders' hail storm claims."[32] Plaintiffs also provide an organizational chart, which does not appear to have been obtained in discovery, purportedly showing that managers such as Freymann supervised catastrophe services personnel.[33]

In response, Defendants point out that Freymann testified a few sentences later in the same deposition that he did not supervise the State Farm personnel engaged in catastrophe response: "I didn't oversee [the catastrophe services personnel]. I saw the regular line unit functions."[34] Defendants also provide evidence that Freymann did not even begin any claims-related work in the Valley until *after* Plaintiffs' claim had been adjusted.[35]

---

[29] *Id.* at p. 5, ¶ 9 (quoting their original complaint: "Defendant Freymann failed to adequately train and supervise Defendant Munoz resulting in the unreasonable investigation and improper handling of Plaintiffs' claim.").
[30] *Id.* at p. 11, ¶ 27
[31] Dkt. No. 4, Attach.1 at p. 6 (internal citation: 81:3-5).
[32] Dkt. No. 4 at pp. 13-14.
[33] *Id.* at p. 3.
[34] Dkt. No. 7, Attach. 2 (internal citation: 83:12-14). Defendants provide more evidence to the same effect.
[35] Dkt. No. 7 at p. 12.

The Court finds the evidence leaves no genuine dispute of material fact assertions regarding Freymann's role within State Farm. Plaintiffs' selective quotation notwithstanding, Freymann's testimony that he supervised his team of adjusters does not show that he supervised hailstorm adjusters (that is, catastrophe adjusters). Moreover, Plaintiffs' assertion that Freymann "logically" must have supervised hailstorm adjusters is an unwarranted deduction without evidentiary support. Businesses organize themselves in many ways; "logic" does not dictate that a regular business manager *must* supervise a special catastrophe unit. Further, Freymann's explicit testimony that he did not supervise hailstorm adjusters stands unrebutted. Finally, whatever Freymann's position in State Farm in general, he did not begin work in the Valley until after State Farm had handled Plaintiffs' claim. This discrete, clear, and unrebutted fact demonstrates that Freymann cannot be liable for supervising catastrophe personnel.

Further, the Court notes that Plaintiffs' legal theory consists almost entirely of their argument that "'persons engaged in the business of insurance' like Freymann can be held liable under the Insurance Code."[36] However, § 541.002, which defines "persons engaged in the business of insurance," is *not* a cause of action in itself.[37] Rather, it defines who may be sued under the causes of action contained in § 541.060 and elsewhere. Plaintiffs cannot sue just any individual who happens to be involved in the business of insurance. The individual must have taken an action both related to their claim and proscribed under one of the causes of action contained in the Texas Insurance Code. Plaintiffs refer to the following provisions contained in Texas Insurance Code §541.060(a):

---

[36] Dkt. No. 4 at p. 11, ¶ 27.
[37] Defining a "person" who may not engage in an unfair act or practice in the business of insurance (TEX INS. CODE §541.003), the insurance code says, "'Person' means an individual . . . including an . . . adjuster . . . ." (TEX INS. CODE §541.002(2)). In turn, "'Adjuster' means a person who investigates or adjusts losses on behalf of an insurer as an independent contractor or as an employee . . . [or] supervises the handling of claims . . . ." (TEX INS. CODE §4101.001(a)(1)(A)).

subsection (1), misrepresenting to a claimant a material fact or policy provision relating to coverage at issue;
subsection (2)(A), failing to attempt in good faith to effectuate a prompt, fair, and equitable settlement of a claim with respect to which the insurer's liability has become reasonably clear;
subsection (3), failing to promptly provide to a policyholder a reasonable explanation of the basis in the policy, in relation to the facts or applicable law, for the insurer's denial of a claim or offer of a compromise settlement of a claim;
subsection (4), failing within a reasonable time to affirm or deny coverage of a claim to a policyholder or submit a reservation of rights to a policyholder; and
subsection (7), refusing to pay a claim without conducting a reasonable investigation with respect to the claim.

While a manager directly supervising an adjuster's behavior could bear liability under one or more of these provisions, none of these provisions can possibly cover "failing to train or supervise." Plaintiffs' novel and ambitious legal theory would allow them to sue individually anyone in State Farm who played a role in management. Plaintiffs have chosen to sue a Claim Team Manager now, but under their theory they could have chosen to sue the CEO as well. Nothing in the Texas Insurance Code so much as hints that plaintiffs may go backwards in time and up the corporate ladder to find the root cause of their adjuster's current poor performance. Stretch the law as they may, Plaintiffs cannot stretch it to cover individuals who have not dealt directly with their claim.

### III. Motion for Leave to File Amended Complaint

Despite Plaintiffs' attempt to characterize the replacement of Florida Munoz with Texas Munoz as an "amendment" seeking to "correct a clerical error,"[38] adding Texas Munoz as a defendant and dismissing Florida Munoz requires *joinder* of a non-diverse defendant, not mere amendment of Plaintiffs' complaint. Upon dismissal of Freymann, the joinder of Texas Munoz would destroy the Court's diversity jurisdiction. Thus, the lenient standards for amending a

---

[38] Dkt. No. 9 at p. 4.

complaint under Federal Rule of Civil Procedure 15 are supplanted here by the more stringent standards of § 1447(e).[39]

Section 1447(e) states: "If after removal the plaintiff seeks to join additional defendants whose joinder would destroy subject matter jurisdiction, the court may deny joinder, or permit joinder and remand the action to the State court."[40] In its canonical decision on whether joinder should be permitted or denied under §1447(e), *Hensgens v. Deere & Co.*, the Fifth Circuit set out four factors to guide district courts: whether "the purpose of the amendment is to defeat federal jurisdiction, whether plaintiff has been dilatory in asking for amendment, whether plaintiff will be significantly injured if amendment is not allowed, and any other factors bearing on the equities."[41] When faced with an amended pleading naming a non-diverse party in a removed case, the Court must "scrutinize the amendment more closely than an ordinary amendment."[42]

Here, the Court finds that more than one of the warning factors are present. First, it is clear that the amendment represents yet another attempt by Mr. Mostyn to defeat diversity jurisdiction, and that Plaintiffs have been dilatory in asking for the amendment. In their motion, Plaintiffs contend that after Defendants removed the instant case based on Freymann's improper joinder, Plaintiffs for the first time "realized that their state-court petition had mistakenly listed Mario G. Munoz's state of citizenship as Florida." As if the Court were so naïve, Plaintiffs attempt to bolster their claim by alleging that despite their "inadvertent" mistake in the state-court petition, (1) Plaintiffs actually served the correct Munoz at the Texas address, attaching as proof an affidavit of service filed with the Hidalgo County District Clerk, and (2) Texas Munoz

---

[39] 28 U.S.C. 1447(e) (2014).
[40] *Id.*
[41] *Hensgens v. Deere & Co.*, 833 F.2d 1179, 1182 (5th Cir. 1987), *cert. denied*, 493 U.S. 851 (1989).
[42] *Id.*

actually answered and appeared before he was served, attaching as proof a general denial by Mario G. Munoz.

However, the record is clear: Plaintiffs asserted a claim against Florida Munoz and served a Munoz in Texas only after the case was removed based on improper joinder of Freymann; Plaintiffs seek leave to amend their complaint only after the Court dismissed Freymann from all other hailstorm cases which Mr. Mostyn represents; and Munoz's general denial does not indicate whether he is the Texas Munoz or the Florida Munoz. Thus, the Court finds Plaintiffs' "inadvertence" unconvincing, particularly given counsel's lengthy history of improper-joinder filings before this Court. The Court therefore finds Plaintiffs' amendment is dilatory and filed only for the purpose of frustrating diversity jurisdiction.

Further, the Court finds that allowing the amendment would be futile and prejudicial to Defendants, as the allegations against Texas Munoz are equally baseless as the false and fraudulent protestations against Freymann. Defendants inform the Court that Texas Munoz did not inspect Plaintiffs' property; Texas Munoz has never been to Plaintiffs' property; the adjustment of Plaintiffs' insurance claim was performed by another adjuster; Mr. Munoz was not at all involved with Plaintiffs' insurance claim until on or about June 13, 2012—two months after Plaintiffs' claim was reported to State Farm and one and a half month after Plaintiffs' property had been inspected by another adjuster; Mr. Munoz's only involvement consisted of speaking once by telephone with Plaintiffs after their claim had been adjusted and arranging the insurance by State Farm of a replacement-cost-benefit payment to Plaintiffs.[43] In support of their allegations, Defendants have incorporated an affidavit of Mr. Munoz.[44]

---

[43] *See* Dkt. No. 12.
[44] *See* Dkt. No. 13, Attach. 1.

In their "amended motion to remand," Plaintiffs contend that despite Defendants' characterization of Munoz's involvement with Plaintiffs' claim, Texas Munoz's role was "clearly more extensive" since "his name appears on the signature line of an estimate provided to Plaintiffs by State Farm, so [again, logically, it follows that] he either conducted the inadequate inspection or approved it." Plaintiffs further contend that "[t]he estimate also makes multiple references to adjustments made by Mario G. Munoz." Defendants, however, clarify that Munoz's name appears on the estimate only because he had to access it in order to arrange the issuance of the replacement-cost benefit payment that Plaintiffs had requested.[45] Thus, once again, after reviewing the record before the Court, the Court is convinced that Plaintiffs' counsel knew before filing the instant motion that Mr. Munoz's involvement with Plaintiffs' claim was almost non-existent, and that Freymann did not occupy the role Mr. Mostyn continues to allege he did. The Court will not again caution Mr. Mostyn that such blatantly false and misleading protestations are sanctionable.

Lastly, the Court concludes that Plaintiffs will not be significantly injured if the amendment is not allowed, as they will still be allowed to pursue their claims against Defendant State Farm Lloyds.

## IV. Holding

For the foregoing reasons, the Court **DENIES** Plaintiff's motion for leave to file an amended complaint adding Texas Munoz as a defendant, **DENIES** Plaintiff's motion to remand, and **DISMISSES** Defendant Freymann as improperly joined. Further, given Plaintiffs' own assertion that they never actually intended to pursue a cause of action against Defendant Munoz from Florida and the fact that Defendant Munoz from Florida was never served, the Court also **DISMISSES** Defendant Munoz from Florida without prejudice from this action for failure to

---

[45] Dkt. No. 12 at p. 8.

prosecute.[46] Accordingly, the Court **DENIES AS MOOT** Defendants' motion to dismiss and Plaintiffs' motion to strike.

    IT IS SO ORDERED.

    DONE this 30th day of October, 2014, in McAllen, Texas.

    _____
    Micaela Alvarez
    UNITED STATES DISTRICT JUDGE

---

[46] *See* FED. R. CIV. P. 4(m) ("If a defendant is not served within 120 days after the complaint is filed, the court—on motion or on its own after notice to the plaintiff—must dismiss the action without prejudice against that defendant . . . .")